Good morning, Your Honor. May it please the court. My name is Ronald Carter. I represent the appellants and the plaintiffs, Michael and Patrice Figueroa. The judgment of the district court should be reversed because the court erred in granting the defendants' Rule 50 motion. In granting that motion, the court ruled that the Figueroas had not been arrested because they were never booked. This was error. In determining whether there has been an arrest, the test is not whether the suspect has been booked. The Supreme Court made this clear in the case of Dunaway v. New York in 1979. In Dunaway, the court stated that the mere fact that the suspect had not been told that he was under arrest, and the mere fact that the suspect had not been booked, did not mean that he, in fact, had not been arrested. In fact, in Dunaway, based upon those facts, the Supreme Court found that the suspect had been arrested. In determining whether an arrest has occurred for which probable cause is required, the court must look at the totality of the circumstances. This court, in U.S. v. Parr, held that while there is no bright line for determining when a Terry or an investigatory stop crosses the line and becomes an arrest, a distinction is drawn at the point where the suspect is taken to the police station. Kennedy. Could you point to me anything in the decision below which says that the basis of the 50-A judgment was that the plaintiffs were not arrested because they were not booked? Yes, I can, Your Honor. Because I have a decision here signed by Judge Liu, and there's no mention of that at all. Is it in the transcript? Yes, Your Honor. That's found in the transcript at page 590. Of the transcript? Sir? Is that in the excerpt? Yes, Your Honor. Okay. That's in the excerpt at 590, page 590, lines 8 through 10. And this is the court's ruling on the defendant's Rule 50 motion, and the court said, quote, the ultimate fact as shown in the case is one where the plaintiffs were never arrested. They were never booked, period, unquote. If we go on a little bit, look at the first paragraph. Even if they did get arrested, the standards for review for qualified immunity, et cetera, et cetera, et cetera. So that was also part of the judgment. That was. The court found that they were never arrested because they weren't booked, but then went on to say that notwithstanding that, these officers were entitled to qualified immunity. And I will address that issue. And if the court is right there, then we should affirm, right? That's right. But they were wrong there. Let's address yourself to that rather than the first point. Yes, Your Honor. As far as the issue of qualified immunity is concerned, the court also erred in finding that these officers had qualified immunity. First of all, in determining whether or not these officers were entitled to qualified immunity, the first inquiry is whether or not the Figueroa's constitutional rights were violated. Here they were because they were arrested without probable cause. The second prong of the inquiry is whether or not the right that was violated was clearly established at the time the events occurred. Here it was clearly established in January of 2002 that it is a violation of a person's Fourth Amendment rights to be arrested without probable cause. The essence of the qualified immunity defense is whether or not the actions of the police officers were reasonable. And here they were clearly unreasonable. No reasonable police officer could have believed that his or her actions in arresting the Figueroa's without probable cause was reasonable. The problem here is that these officers took them to the police station to continue the investigation. And it's in a long line of cases, starting with this court's decision in part, going back to this court's decision in U.S. against Gonzalez, the Supreme Court's decision in Dunaway, where the courts have said repeatedly, you cannot take a suspect to the police station to further your investigation. What if we have the following? Let's assume that the police knew that they could not arrest without probable cause and an arrest that's a knowing arrest, knowing that they don't have probable cause, is a violation and they don't have qualified immunity. I'm with you to that extent. I mean, I think that's established law. They had an obligation to know it. And what if further we were to conclude, at least for purposes of my question, that there was no probable cause, but it's a close question. And they guessed wrong. That is to say, this is not an outrageous case where they simply picked somebody up off the street with no reason for any suspicion at all. There was some reason for suspicion. But we now sitting here think, well, there wasn't probable cause, but it was close. Qualified immunity in that event? No, not at all, Your Honor. The court reviews this de novo. And we review for purposes of qualified immunity the judgment of the police officer de novo, and if we think he's wrong, even though it was close, he nonetheless is not entitled to qualified immunity? That's right, Your Honor, because the court below made the decision in the context of a Rule 50A motion. And the standard of review on a Rule 50A motion is that looking at the facts in the light most favorable to the plaintiffs in this case. Oh, I understand that. So I want looking at the facts on the standard of judgment as a matter of law, which is in a sense it's the same thing as the summary judgment. It's just we have testimony. But looking at the facts entirely in favor of your client, with those facts, if we assume it was kind of a close call, but the officer got wrong, there wasn't probable cause. Qualified immunity or not? No, not at all, Your Honor. And, in fact, in this case. So the officer, even if it's close and he makes a judgment call with which we later disagree, no qualified immunity? Not in this case, Your Honor. And in the problem is. Not in any case. I'm asking an abstract question of law. I don't want. I'm not. We can then get to the facts as to whether or not it was close. Yes. In the abstract situation, if it arises pursuant to a Rule 50A motion and the question is close, it must go to the jury. There are factual issues that the court has to consider. In this case, it was a jury trial. No, I tried to take that out of my question. Okay. In this case, it wasn't close is the problem. The facts for these officers were that the dispatcher had told them, number one, there was no gun. When they got there, they found no gun on either Mr. Figueroa or Mrs. Figueroa. They found no gun in their vehicle. The dispatcher told these officers that Mrs. Figueroa had called them for help. She was the victim. They were the victim. She had called them for help. And when Officer Strobridge arrived at the scene, he's on the police radio. He's talking to the dispatcher. The dispatcher tells him Mrs. Figueroa is on the phone. She's called her. When he drives up, he sees her on the phone. The dispatcher told these officers there had not been a robbery. They said what had happened was that the owner of the jewelry store's son, Travis Burney, had attacked Mr. Figueroa, that Mr. Figueroa had been injured. He was bleeding from the head and needed medical attention. Further, these officers knew, based upon the testimony of Officer Bless, who just by an act of God happened upon this scene and witnessed the whole thing. He told Officer Strobridge, number one, that Mr. Figueroa never acted like he had a gun, never put his hand behind his back as if to draw a gun, never made any aggressive movements toward Mr. McBurney. These officers knew. Officer Strobridge talked to the manager of the bank, Mr. Cordelia, because one of the grounds on which they tried to arrest the Figueroas and which they did arrest the Figueroas was forgery. The bank manager confirmed that the cashier's check from Wells Fargo was valid. It was not a forgery. Officer Strobridge knew that at the scene. And most telling, Your Honor, was that Officer Strobridge, under the fact of this case, knew that William McBurney, the owner of this jewelry store, All That Glitters, was a convicted felon. He knew this. How he knew it? He knew it. Perhaps they were friends, but he knew it. It came out at the trial. He knew the man had been convicted of a crime involving dishonesty and had spent 18 months in the federal penitentiary. And yet he chose to believe what McBurney had to say over what the Figueroas had to say. Well, in fact, they didn't even interview the Figueroas at the scene. They decided to interview them at the station house. And the Figueroas had no criminal record. Okay. You've got seven seconds left. Why don't we hear from the other side, and then we'll give you a minute for rebuttal. Thank you, Your Honor. Sure. Good morning. Good morning, members of the Court. Very briefly. Could you please identify yourself for the record? Thomas J. Feeley on behalf of the defendant, Appalese, Officers Brown, Strowbridge, and the city of San Luis Obispo. Just very initially, this comment that perhaps Officer Strowbridge was a friend of the reporting party, there's nothing in the record to support that. I don't know why that was said here this morning. But the fact that the store owner had been convicted of a felony and had served time may be of interest and may come into his credibility at some point in the future. But the police had reason to believe at first that a robbery had taken place. They received a silent alarm call and a phone call saying that there's been a robbery. Then more information comes in, there isn't a robbery. There's a woman with a gun or there isn't a woman with a gun. There's been a fight in the store or there hasn't been. The typical crazy quilt of information that flows in a situation like this. When the officers arrived, their intent was to determine if a crime had been committed. And in order to determine that in this situation, I submit it was appropriate for Officer Strowbridge to remove the involved parties, the people who had been accused by the store owner, to a quiet place where business could be conducted. That was done and they were released very shortly. They were released by an officer who, when he took them to the San Luis Obispo police station, didn't ignore them, didn't go about something else. He immediately began exploring the case. He talked to the district attorney. What kind of restraints were Mr. and Mrs. Figueroa subjected to? They were, my understanding, and counsel may correct me, I don't think it's in the record that they were either of them handcuffed. Could you say again? I didn't hear you. I believe it's not in the record as to whether either of them were handcuffed in the transport. Mrs. Figueroa was searched by a female officer privately and the search was simply essentially a pat-down and she was asked to open her clothing to some extent. I believe it's undisputed they were handcuffed at the scene. They may well have been, Your Honor. The transport was some two or three minutes to the police station. The time in the station was less than an hour and they were released. They were given a certificate of release under Penal Code Section 849B that this was not an arrest. They submitted that there was no more expeditious way to resolve this than what the officers did and the gist of the plaintiff's case and their appeal is that they didn't do anything wrong and they may not have done anything wrong. They may have had some extreme form of buyer's remorse in dealing with Mr. McBurney, the store owner. Maybe he overcharged them. That wasn't what Officer Strobridge was trying to resolve. He was confronted with the situation at first that there are armed robbers. That's never totally resolved and while trying to resolve that, the first thing he did was try to determine if there was a gun in the purse. Interestingly, there's no pushing by the plaintiff either in the case below or on appeal that this was excessive force in grabbing the purse and the plaintiff's trying to pull it back in which encounter she suffered first what was apparently a broken fingernail and then a broken finger. The officer had the purse first. She tried to grab it. He resolved that there's no gun there. Then he went into the store and got the information that's been relayed accurately by counsel. The one thing counsel left out is the very bizarre behavior in the store of Mr. Figaro of taking a negotiable instrument and chewing it, putting it in his mouth for reasons that he said were to protect himself because he wasn't strong enough to fight the other person off. Another thing that Officer Strobridge had determined in his phone call to the bank was that Mr. Figaro had essentially lied to the bank officer when he wanted to get that check back. He was told by the bank officer that a cashier's check can only be canceled if it's been lost or stolen. At that point, Mr. Figaro had already told the bank officer that he had given the check to the merchant. Then when he was told the only way we can cancel it is if it's lost or stolen. Did the police officers know this at the time they, I'll stay away from the word arrest for the moment, restrain Mr. Figaro? Yes. And what exactly had they been told about this statement at the bank? It's in the reporter's transcript at page 289 through page 290. From our brief, Officer Strobridge also interviewed the manager of the bank that had issued the involved cashier's check and learned that earlier that day in an attempt to cancel a said check, plaintiffs had falsely reported as stolen. And Officer Strobridge knew this at the time that he put Mr. and Mrs. Figaro under restraint? Yes. And from there, he's trying to figure out what this is all about. I submit that this is a situation I've never heard of before. And I don't know if the court has ever heard of this kind of behavior in a jewelry store. We're talking about a check for $15,000. We're talking about adults. It's not some teenagers in a flea market arguing over some trinket. It's apparently something's wrong here. Is it forgery? Is there some reason why this check has to be chewed up? Is it a burglary because they went into the store intending to commit a felony? Officer Strobridge has testified consistently that he didn't arrest them. I submit that that's really a pit of a straw issue. Sergeant Brown at the scene told Mr. Figaro that he was under arrest. Interestingly, it wasn't Sergeant Brown putting him under arrest. He was reporting it mistakenly of what Strobridge had done. But as Judge Liu made clear in his ruling, there was probable cause for an arrest if one was made. This case that plaintiffs rely on so heavily and felons rely on so heavily, this U.S. v. Parr, the facts are very inapposite to that. That involved a traffic stop where the officer had the driver come back to the patrol car and sit in the patrol car where he verified identification, not placing the person under arrest. And while the person was in this seated arrangement that was not an arrest, some sort of restraint, a detention anyway, the officer searched the vehicle, found a shot off shotgun and some stolen mail and some narcotics paraphernalia. Interestingly, the driver was arrested and then released. This court made very clear that there was probable cause for an arrest if the officer had chosen to do so. What they found when the government tried in the federal case the stolen mail, that the search was unlawful because no narcotics had been gotten and the person was not in custody at the time. Here there's been no seizure of anything. The people were simply interviewed at a little more length than they wanted to be interviewed and then released. Now if we were talking about were they arrested for purposes of Miranda, it's pretty clear they were arrested. They were certainly interviewed, yes. Interviewed having been involuntarily detained. Yes, Your Honor. If there are any questions, I'll attempt to respond. Just very briefly as far as the liability for the unqualified immunity, I think Judge Liu very clearly said when he said this does not go to the jury that no reasonable jury could find that it wasn't probable cause and that no reasonable jury could find that the officer was unreasonable. So this appeal is essentially a challenge to the thought processes of Judge Liu, and that is not appropriate. The district court heard all of the evidence, didn't weigh witnesses against each other, and it would be unreasonable for any juror to find against the officers. Finally, on the liability of the city, there being no, if one follows that logic, there being no constitutional violation by the officers under the Heller v. Los Angeles case, clearly there's no liability for the city. But beyond that, there's no evidence at all of an unconstitutional policy. Chief Gardner testified that it's the policy of the police department to detain people to determine the crimes committed. That, I submit, is not any sort of unconstitutional policy. Okay? Thank you. Would you like a minute for rebuttal? Thank you, Your Honor. Here's the problem. The problem is that the city of San Luis Obispo had a policy in January of 2002 that allowed their police officers to take the figaroes down to the police station, and by the way, as far as the restraints, they were handcuffed, they were placed in the police vehicles, they were taken to the police station, they were strip-searched and then put in the holding cells. Strip-searched, that is to say, naked? The officers took off Mrs. Figaro's pants and put their hands in her panties looking for whatever they were looking for. That's what I mean by strip-searched. It was a very egregious restraint, a very egregious violation of their rights. And the problem is that the city, as testified to by the police chief, had a policy of allowing this to happen. That is, it was okay to take suspects to the police station for the purpose of continuing the investigation even though there was no probable cause for the arrest. That's the problem, and that's why the city is liable under Monell. Okay. But if under Monell, even if the policy is to arrest without probable cause, if in the event, if in the facts of this case there was probable cause, there would be no liability under Monell. You would agree with that? I would agree with that, Your Honor. Thank you. Thank you very much. Thank both sides for their argument. The case of Figaro v. City of San Luis Obispo is now submitted for decision. The next case on the argument calendar is McVeigh v. Rowe.
judges: T.G. Nelson, W. Fletcher, Bea